The People of Puerto Rico, Plaintiff and Appellee, *v.* Pedro Sierra, *alias* Luis Dalta, Defendant and Appellant. Same *v.* Same. Same *v.* Same.

Nos. 5235, 5236, and 5237. Argued February 8, 1935.—Decided March 19, 1935.

*C. Iriarte* and *F. Fernández Cuyar* for appellant. *R. A. Gómez,* Prosecuting Attorney, and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

There are involved herein three criminal prosecutions for libel, brought against the same defendant, Pedro Sierra, *alias* Luis Dalta, and based upon a single publication, the injured parties being, respectively, Miguel Guerra Mondragón, Manuel Rodríguez Serra, and Carlos del Valle.

In each case the defendant was found guilty and sentenced to pay a fine of $30 and, in default of such payment, to be confined in jail one day for each dollar left unpaid. Feeling aggrieved by that judgment, he appealed, and although the three appeals have been perfected separately, only one brief has been filed, and the cases were argued together at the hearing. Hence we shall consider them in a single opinion herein.

The information in case No. 5235 reads thus:

"The Special Prosecuting Attorney at Large, F. G. Pérez Almiroty, files this information against Pedro Sierra, *alias* Luis Dalta, for an offense of libel, a violation of section 243 of the Penal Code (a misdemeanor), committed as follows:

"The said Pedro Sierra, *alias* Luis Dalta, on or about January 17, 1931, in the Municipality of San Juan, P. R., within the Municipal Judicial District of San Juan, P. R., which forms part of the Judicial District of the same name, being editor of the newspaper 'El Diluvio,' which is published weekly in the city of San Juan, did unlawfully, wilfully, and maliciously permit to be published, and did actually publish and cause to be circulated in the said Municipality of San Juan, an article entitled: 'The Scandalous Affair of the Bayamón Waterworks before the Supreme Court. A Law Clerk is accused of being a participant in the case,' which article textually reads as follows:

" 'There was heard this week before the Supreme Court, five judges sitting, the scandalous "affair" of the Bayamón waterworks, the bids for which were attacked before the courts of justice, on account of immoralities committed in making the award.

" 'At the hearing of this case, one which has most discredited the Department of the Interior, Attorney Coll y Cuchí raised the following questions:

" 'First: That the author of the plan for the construction of the Bayamón filtration plant was Carlos del Valle, for which he collected some large fees.

" 'Second: That this same engineer, being the author of the plan, stipulated therein that no engineer who did not represent firms installing filters could participate in the bidding.

" 'Third: That despite his being the author of the plan, Carlos del Valle presented himself as a bidder and made the bid which was accepted.

" 'Fourth: That Carlos del Valle is the representative of the Robberts Filter Mfg. Co., the seller of the filters.

" 'Fifth: That Carlos del Valle was awarded the contract for a sum $10,000 greater in cost than the other bids.

" 'Sixth: That neither Carlos del Valle nor Del Valle & Cía. possess any record as contractors.

" 'Seventh: That the only construction contract carried out by Carlos del Valle was that of the Guayama Irrigation System, the outcome of which we all know, since he could not finish it and his bondsmen found themselves obliged to pay $100,000, from which they were relieved by our Legislature since of those bondsmen two were 'fathers of the country.'

" 'Eighth: That although the award was attacked and was turned over for study and decision by a committee of very compe-

tent engineers composed of Messrs. Antonio Luchetti, Ramón Rodríguez López, and Rafael M. González, of the Department of the Interior, who decided that the contract ought not to have been awarded to Carlos del Valle, Commissioner Esteves, by reason of a simple opinion of the Department of Justice prepared by the law clerk Rodríguez Serra, awarded the contract to Del Valle.

" 'Ninth: It was proved that the law clerk Rodríguez Serra prior to occupying that position was attorney for Del Valle.

" 'Tenth: That it was likewise proved that all the opinions rendered by the Department of Justice, have been prepared by Rodríguez Serra, in favor of his old client, Del Valle.

" 'Eleventh: That all these scandalous things which are incompatible with the good name of justice in Puerto Rico, were laid before the Supreme Court, the highest court in the Island.

" 'After these questions were raised by Attorney Coll y Cuchí with facts and exact figures and all these immoral practices were exposed, the attorneys representing Mr. del Valle, Guerra Mondragón and Soldevila, failed to refute these facts raised and laid before the Court; rather they accepted them.

" 'Rodríguez Serra got up to state "that he understood that Attorney Coll y Cuchí meant no offense with his accusations." And he said nothing more.

" 'Bolívar Pagán, who represents the Municipality of Bayamón, only stated his irrelevant objection as. to the thirty days provided by law for protest against the award of a public contract. This is an argument already worn-out and unfounded, since the award of this contract was made the subject of a protest before the Department of the Interior, which appointed a board of technicians to investigate the proposals.

" 'This matter is one of the most shameful that we have seen, involving as it does the award of a contract to an insolvent bidder and making a gift to him of the $10,000 excess over the bids made by the other bidders; persons of known moral and social solvency, as are Messrs. Félix Benítez Rexach, Fernando Caso, and Manuel L. Miró.

" 'The best demonstration of the whole scandalous affair is that scarcely had the work begun and the sum, $55,000, in possession of the Municipality of Bayamón been spent, than the work was stopped, although we are informed that the Department of the Interior has placed the responsibility for this interruption on Del Valle.

" 'Why was this work stopped? For the simple reason that when the Munic'pality of San Juan found out about the shameful award whereby $10,000 of the taxpayers' money was given to Del Valle, it repealed the ordinance by which it was lending $35,000 to Bayamón to finish this work, which repeal it later confirmed in spite of the opinion of the Department of Justice (we should say Rodríguez Serra) holding void the repeal of the ordinance.

" 'But is it that they think that the money of the taxpayers of San Juan is at the mercy of the machinations of the Municipality of Bayamón, of the contractor Del Valle, of Guerra Mondragón, and of Rodríguez Serra?

" 'Let us await for the final decision of our highest court, since the whole country already knows the kind of birds that make up the board of awards of the Municipality of Bayamón, its witless Mayor included, and its Municipal Assembly, which by not protesting against this wicked affair shows that it is also mixed up in this shameful situation';

"The statements contained in the foregoing article, written and published with the deliberate intent of defaming Miguel Guerra Mondragón, an attorney practising in the city of San Juan, within which the above-mentioned publication containing the article referred to was published and circulated, all tending to expose the aforesaid Attorney Miguel Guerra Mondragón to public hatred, contempt, and ridicule and to discredit, depreciate, and dishonor him in his good reputation and fame, charging him among other acts, with that of the commission of an offense of bribery, as is shown by the following paragraphs of the aforesaid article:" (Here are copied three of the final paragraphs thereof.)

"Done contrary to the law for such case made and provided and to the peace and dignity of The People of Puerto Rico."

The first twenty-three paragraphs of the information which served as a basis for the prosecution in case No. 5236 are identical with those above quoted, and it is added:

"The statements contained in the foregoing article, written and published with the deliberate intent of defaming Manuel Rodríguez Serra, an attorney, who at present holds the position of Second Assistant to the Attorney General of Puerto Rico, in the city of San Juan, within which the aforesaid publication containing the article referred to was published and circulated, all tending to expose the aforesaid attorney Manuel Rodríguez Serra to public hatred, con-

tempt, and ridicule and to discredit, depreciate and dishonor him in his good reputation and fame, charging him among other acts, with that of the commission of an offense of bribery, as is shown by the following paragraphs of the aforesaid article:'' (There are here copied questions 8, 9, 10, and the next to last and last paragraphs of the article.)

Similarly as to the first twenty-three paragraphs of the information on which was based the prosecution in case No. 5237. The information goes on to say:

''The statements contained in the foregoing article, written and published with the deliberate intent of defaming Mr. Carlos del Valle, an engineer practising in the city of San Juan, within which the above mentioned publication containing the article referred to was published and circulated, all tending to expose the aforesaid Mr. Carlos del Valle to public hatred, contempt, and ridicule and to discredit, depreciate, and dishonor him in his good reputation and fame, charging him among other acts, with that of the commission of an offense of bribery, as is shown by the following paragraphs of the aforesaid article:'' (Here are copied questions 5, 6, 7, 8, 9 and 10, and several of the last paragraphs of the article.)

In the statement of the case and opinion of the district court on the three cases, the trial judge expressed himself as follows:

''Considering the evidence, and particularly the testimony of Attorney Coll y Cuchí, the article in question is not an impartial and exact statement of his argument before the Supreme Court. Mr. Coll did not there state that the money of the taxpayers of San Juan would be at the mercy of the machinations of the Municipality of Bayamón, of the contractor Del Valle, of Guerra Mondragón, and of Rodríguez Serra; nor that the birds that make up the board of awards of Bayamón, its witless mayor, and the municipal assembly, in not protesting against the immoral affair, showed that it was also mixed up in the shameful matter. Neither did he say that Rodríguez Serra was the attorney for Carlos del Valle, nor that he rendered opinions favorable to the award of the contract, nor that Del Valle was an insolvent bidder to whom they were giving $10,000 of the taxpayers' money. There was no evidence that Rodríguez Serra and Guerra Mondragón received any money, and on the contrary, Coll y Cuchí testified that they touched nothing and were playing the role

of dupes between Del Valle and the Municipality of Bayamón. Neither was there any evidence of the receipt of money by Del Valle, which was not the product of his contract with the municipality. Consequently, this is not a case for the application of the exception provided in section 249 of the Penal Code, to the effect that malice ought not to be presumed from the mere fact of publication. Moreover, there was presented in evidence a subsequent article appearing in the same newspaper, in its issue of February 21, 1931, entitled 'Rodríguez Serra in Full Length,' tending to show malice in the prior publication.

"The evidence has further shown that the said article subject of the information was written by Bernardo Cruz, who was present at the hearing before the Supreme Court as a reporter and that the defendant thereafter consulted Attorney Coll y Cuchí, who was of the opinion that it could be published in 'El Diluvio' as a publication of sharp and violent criticism but perhaps could not be published as an editorial in 'La Democracia.' It must not be inferred from this that what might have been libel in one publication would not be so in another for the reason that one publication has different characteristics from the other and is read by a different class of people. The publication is the same in the eyes of the law, and the words and thoughts can not have a different meaning in one newspaper than in another.

"The explanation, clarification, or comment as to the defamatory character of certain phrases made by the journalist, when what he intends to publish is the report of the argument of an attorney before a court, is no defense in a prosecution for libel. What is required is an impartial and exact report of what took place at the court hearing, and even that is subject to prosecution, upon showing that there was malice in making the report, or that it was with the intent of causing harm. The privilege exists for those who use it honestly, not as a refuge for libelous persons or to deprive honest persons of protection. *Franco* v. *Martínez*, 29 P.R.R. 221. The publication of judicial proceedings, to be privileged, must be fair, just, and impartial. *People* v. *Toro*, 21 P.R.R. 41.

"It is not necessary that the phrase or expression charging the crime or act which tends to expose to ridicule or contempt the party libeled should have been the subject of judicial decision. It is sufficient that from the form and manner in which the publication is made, it tends to connect the party libeled with some criminal act or to charge him with the commission of something exposing him to public shame.

"For lack of an innuendo in the complaints in the cases which we are now considering (*People* v. *Colberg,* 24 P.R.R. 630; *People* v. *Aybar,* 38 P.R.R. 533; *People* v. *Aponte,* 41 P.R.R. 312), as to the meaning from the standpoint of libel of the words concerning management of the 'money of the taxpayers,' it cannot be said with certainty that the publication charges an offense of bribery or corruption within the provisions of Title X, Chapter 1, of the Penal Code; but it is clear that such publication exposes Messrs. Del Valle, Guerra Mondragón, and Rodríguez Serra to public contempt and ridicule, and discredits, impeaches, and dishonors them in their good reputation and prestige (*fama*), as to which Mr. Coll y Cuchí testified, and this constitutes a violation of section 243 of the Penal Code, which defines the offense of libel.

"The defendant is not the author of the libelous article, and moreover he consulted an attorney before publishing it in his newspaper, and although this does not excuse him from responsibility, it may be taken into account, as Mr. Coll stated, to mitigate the punishment."

Three errors are assigned and argued extensively and carefully in the appellant's brief, to wit: That the court erred in weighing the evidence; that it erred in not applying section 249 of the Penal Code; and that it erred in holding that the publication constitutes a violation of section 243 of the Penal Code, notwithstanding the fact that it held that an offense of bribery or corruption was not charged. After a careful study of all of the cases, we believe that none of the errors was committed.

"A libel," says section 243 of the Penal Code, "is a malicious defamation, expressed either by writing, printing, or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."

And section 245 adds: "An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown."

Here the fact of publication is admitted, and it is admitted that the defendant is the editor of the newspaper in which the publication was made. Not even an attempt was made to prove the truth of the charges. The defendant merely invokes section 249, which provides: "No reporter, editor, or proprietor of any newspaper is liable to any prosecution for a fair and true report of any judicial, legislative or other public official proceedings, or of any statement, speech, argument, or debate in the court of the same, except upon proof of malice in making such report, which shall not be implied from the mere fact of publication."

As the appellant has very well pointed out in his brief, the publication comprises two parts, one of which is stated to be a report of what happened at the hearing of an appeal before this Supreme Court, and the other which consists of the comments of the reporter.

With respect to such comments, the Penal Code itself, in section 250, provides: "Libelous remarks or comments connected with matter privileged by the preceding section receive no privilege by reason of their being so connected."

Upon examination of the evidence offered by the defendant, it is found that in fact many of the questions which it is said in the publication were raised by Attorney Coll y Cuchí find support in the testimony of that same attorney and in the testimony of the witnesses Caro and Rossy. Some do not. If we were dealing with only that part of the publication, we would be inclined to reverse the judgments appealed from, basing ourselves upon a liberal interpretation of the provisions of section 249 of the Penal Code.

But there is more, the publisher goes further and in the title and in the beginning of the article and in the final paragraphs thereof, makes statements charging Messrs. Guerra, Rodríguez Serra, and Del Valle with the commission of acts which, if true, would show their lack of honesty and virtue. And what basis does he have for making such statements?

Only the oral argument of the attorney for one of the parties in a contested case submitted for decision to a court of justice. Such basis, without more, is not sufficient. To publish as true accusations so serious upon that sole basis, is not justified. The presumption of malice is in force and the offense must be understood to have been committed. The liberty of the spoken and written word does not suffer by reaching that conclusion. Only the responsibility is demanded which every human action carries with it.

The judgments appealed from must be affirmed.